## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:12-cr-00136-SI |
| v. | **OPINION AND ORDER** |
| **THOMAS DOUGLAS SMITH**, | |
| Petitioner-Defendant. | |

Billy J. Williams, United States Attorney, and Scott M. Kerin, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Thomas Douglas Smith, No. 74155-065, Atwater U.S. Penitentiary, Inmate Mail/Parcels, P.O. BOX 019001, Atwater, CA 95301, *pro se*.

**Michael H. Simon, District Judge.**

On October 9, 2015, Thomas Douglas Smith ("Smith" or "Petitioner") moved to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255 ("§ 2255"). He argues that he received ineffective assistance of counsel for four reasons: (1) Smith's counsel misinformed him regarding the applicability of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e) ("§ 924(e)"), leading Smith to enter an unknowing, involuntary guilty plea; (2) Smith's counsel ignored his request to file a direct appeal challenging the Court's denial of

Smith's motion to withdraw his guilty plea; (3) Smith's counsel failed to conduct sufficient

discovery; and (4) Smith's counsel otherwise deprived Smith of a meaningful opportunity to

establish his actual innocence of the crime of being a felon in possession of ammunition in

violation of 18 U.S.C. § 922(g) ("§ 922(g)"). For the reasons set forth below, the Court denies

Smith's motion.

## STANDARDS

### A.  Section 2255

Section 2255 permits a federal prisoner in custody under sentence to move the court that

imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> the sentence was imposed in violation of the Constitution or laws
> of the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack . . . .

§ 2255(a).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition

brought under that section '[u]nless the motions and the files and records of the case *conclusively*

*show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465

(9th Cir. 1994) (quoting § 2255) (emphasis in original). In determining whether a § 2255 motion

requires a hearing, "[t]he standard essentially is whether the movant has made specific factual

allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*,

638 F.3d 1055, 1062 (9th Cir. 2010) (alteration in original) (quotation marks omitted). A district

court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations

in the motion, when viewed against the record, do not give rise to a claim for relief or are

'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*,

743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

If a court denies a habeas petition, the court may issue a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or [if] jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Although the petitioner is not required to prove the merits of his case for the court to issue a certificate of appealability, the petitioner must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)) (quotation marks omitted).

## B.  Ineffective Assistance of Counsel

The leading federal case governing claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a challenger must prove: (1) that counsel's performance was deficient; and (2) that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Id.* at 688, 694.

Under the first *Strickland* prong, in order for counsel's performance to be constitutionally deficient, it must fall below an objective standard of reasonableness. *Id.* A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the

Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"*Strickland* held that 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010) (quoting *Strickland*, 466 U.S. at 691).[1] The specific standards governing counsel's duty to investigate provide:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> . . . And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.

*Strickland*, 466 U.S. at 690-91. The *Strickland* standard governing counsel's obligations to investigate and present mitigating evidence applies at sentencing. *Cox v. Del Papa*, 542 F.3d 669, 678 (9th Cir. 2008) (citing *Wiggins v. Smith*, 539 U.S. 510, 521-23 (2003)).

Under the second *Strickland* prong, prejudice is established where there is "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. To show prejudice in the

---

[1] *Strickland* and *Wiggins v. Smith*, 539 U.S. 510 (2003), both involved the assistance of counsel in the penalty phase of a capital case. The Supreme Court has clarified that a right to counsel exists during sentencing in a noncapital case. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *see also Davis v. Grigas*, 443 F.3d 1155, 1159 (9th Cir. 2006) (Graber, J., concurring) (explaining that *Strickland* applies "to a noncapital sentencing that is 'formal' and that involves findings or conclusions that provide a standard for the imposition of sentence").

context of a plea of guilty, the challenger must demonstrate that "there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial." *Smith*, 611 F.3d at 986 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "The

longstanding test for determining the validity of a guilty plea is whether the plea represents a

voluntary and intelligent choice among the alternative choices of action open to the defendant."

*Hill*, 474 U.S. at 56 (citation and quotation marks omitted). In the sentencing phase of a

noncapital case, trial counsel error that results in prejudice can satisfy the second prong of

*Strickland. See Glover v. United States*, 531 U.S. 198, 203 (2001) (holding that prejudice is

shown where there is "any amount of [additional] jail time").

Because a convicted defendant must satisfy both prongs of the *Strickland* test, his failure

to establish either deficient performance or prejudice makes it unnecessary to examine the other

prong. *See Strickland*, 466 U.S. at 699. Where the *Strickland* test is satisfied, the remedy under

§ 2255 is that the court "shall vacate and set the judgment aside" and do one of four things:

"discharge the prisoner or resentence him or grant a new trial or correct the sentence as may

appear appropriate." § 2255(b).

## BACKGROUND

### A.  Smith's Guilty Plea and Sentencing

Early in the morning on May 22, 2011, Portland Police officers responded to a shooting

at the Interstate Bar and Grill in north Portland. When the officers entered the bar, they saw Paul

Anthony Hall, Jr. clutching his stomach. It appeared that Mr. Hall had been shot. Mr. Hall was

transported to a hospital, and during a later interview, he reported that someone stepped on his

shoe and that, shortly thereafter, someone had shot him. Mr. Hall did not provide any more

details about what led to the shooting.

Police officers obtained surveillance video footage from cameras in the parking lot and behind the main bar of the Interstate Bar and Grill. The video footage showed that on May 22, 2011, a man wearing a maroon baseball cap entered the bar. This man was later identified as Smith. Another man, later identified as Damian Holcomb, punched Smith, who fell backward and lost his hat. Hall then began fighting with Smith. The video footage showed Smith with an object in his hand that appeared to be a gun, which Smith appeared to fire at Hall. Officers recovered the maroon baseball cap from the bar, and a forensic lab report identified Smith's DNA on the hat.

Smith was arrested for an unrelated incident on July 5, 2011. Police officers informed him that they were also investigating him for the shooting on May 22, 2011. Smith admitted to being at the bar with a friend on May 22, but he denied shooting Hall. Smith also inconsistently asserted that he acted in self-defense. Police officers never recovered the gun used to shoot Hall, but they did recover two spent .380 caliber cartridge casings and two fired .380 caliber bullets at the scene of the shooting.

On October 30, 2012, Smith pled guilty to the following offense: on approximately, May 22, 2011, Smith knowingly and unlawfully possessed ammunition, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year. In exchange for his guilty plea, the government agreed to strike from the indictment an Armed Career Criminal charge under 1§ 924(e). As an Armed Career Criminal, Smith would have faced a 15-year mandatory minimum sentence and a maximum sentence of life in prison. Also because of Smith's plea, the Multnomah County District Attorney's Office agreed not to bring any charges against Smith in connection with the shooting at the Interstate Bar and Grill.

In compliance with Federal Rule of Criminal Procedure 11, the Court conducted a colloquy with Smith. The Court thoroughly reviewed Smith's rights, the nature of the charge to which he was pleading guilty, the maximum penalties, and the nature and terms of the plea agreement. In his plea agreement, Smith waived the right to appeal and file a collateral attack challenging his conviction on any grounds, except for ineffective assistance of counsel and other grounds not relevant here. Based on Smith's criminal history and the sentencing factors set out in 18 U.S.C. § 3553(a), the U.S. Probation Office recommended a sentence of 110 months imprisonment followed by three years of supervised release.

On May 30, 2014, approximately 20 months after Smith entered his guilty plea, he moved to withdraw his plea. The government objected, and on July 14, 2014, the Court held a hearing on Smith's motion. The Court denied the motion and sentenced Smith to 94 months imprisonment with three years of supervised release to follow. Smith did not appeal. He now argues that he only pled guilty due to ineffective assistance of counsel.

**B.  Declarations of Smith's Former Legal Counsel**

At the government's request, the Court directed Smith's former legal counsel to respond to Smith's allegations of ineffective assistance of counsel. Christopher J. Schatz, Fidel Cassino-DuCloux,[2] and Benjamin Kim responded with declarations. Mr. Schatz and Mr. Cassino-DuCloux work for the Federal Public Defender for the District of Oregon and represented Smith from March 21, 2012, to April 19, 2013.[3] Mr. Schatz and Mr. Cassino-DuCloux filed pretrial motions and prepared for trial. Two weeks after a pre-trial evidentiary hearing, the government offered Smith a plea deal, which Smith accepted on October 30, 2012.

---

[2] Fidel Cassino-DuCloux was formerly known as Harold DuCloux.

[3] Mr. Cassino-DuCloux was appointed on March 21, 2012, and Mr. Schatz filed a notice of appearance on April 6, 2012.

Based on their understanding of the law at the time, Mr. Schatz and Mr. Cassino-DuCloux advised Smith of the potential applicability of the ACCA to his case. In their declaration, Mr. Schatz and Mr. Cassino-DuCloux state that they believe they advised Smith about a potential sentence enhancement under the ACCA in an appropriate and non-threatening manner. Mr. Schatz and Mr. Cassino-DuCloux do not recall assuring Smith that if later developments in the law established that he had not committed the kind of prior crimes required for application of the ACCA, he would be allowed to withdraw his guilty plea.

Additionally, Mr. Schatz and Mr. Cassino-DuCloux state that they thoroughly investigated and litigated Smith's case. Two Federal Public Defender Investigators were assigned to Smith's case. Mr. Schatz and Mr. Cassino-DuCloux consulted with video and ballistics experts, and their investigators interviewed and re-interviewed multiple witnesses at Smith's direction. Federal Public Defender Investigator Brian Warner interviewed Mr. Hall, who told Mr. Warner that he did not remember anything about the shooting. Mr. Schatz and Mr. Cassino-DuCloux further requested that the government produce all evidence relevant to ascertaining the credibility of government witnesses and all exculpatory information in favor of Smith. In response, the government provided additional information, and Mr. Schatz and Mr. Cassino-DuCloux provided Smith with copies of all pertinent documents. Mr. Schatz and Mr. Cassino-DuCloux thoroughly discussed the contents of all discovery with Smith on multiple occasions.

According to Mr. Schatz and Mr. Cassino-DuCloux, they also repeatedly advised Smith that, if he wished to exercise his right to go to trial, they would conduct his trial defense. The parties agreed to a firm trial date of November 13, 2012. Smith chose to accept the government's plea offer rather than go to trial, and Mr. Schatz and Mr. Cassino-DuCloux supported that

decision because their analysis of the case indicated that Smith's conviction at trial by a jury verdict of "guilty" was highly probable. Mr. Schatz and Mr. Cassino-DuCloux believe they represented Smith to the best of their joint professional responsibilities.

On January 17, 2013, a consultation attorney, Kristen Winemiller, reviewed the proceedings further to advise Smith on the issues in the case. When Smith requested appointment of new counsel, the Court formally appointed Ms. Winemiller as Smith's counsel and relieved Mr. Schatz and Mr. Cassino-DuCloux from further representation of Smith. On October 11, 2013, Ms. Winemiller moved to be relieved as Smith's counsel due to an ethical conflict, and on October 18, 2013, the Court appointed Mr. Kim to represent Smith. In his declaration, Mr. Kim states that he does not recall Smith directing him to file a direct appeal. Mr. Kim also states that he believes he competently represented Smith to the best of his professional responsibilities.

## DISCUSSION

### A. Whether Smith's Counsel Misinformed Him Regarding the Applicability of the ACCA

Smith asserts that his counsel misinformed him regarding the applicability of the ACCA, leading Smith to enter an unknowing, involuntary guilty plea. The ACCA "imposes a special mandatory 15-year prison term upon felons who unlawfully possess a firearm and who also have three or more previous convictions for committing certain drug crimes or 'violent felon[ies].'" *Begay v. United States*, 553 U.S. 137, 139 (2008) (quoting § 924(e)(1)) (alteration in original). The potential ACCA predicates identified in Smith's indictment are serious drug offenses and felony crimes of violence. The serious drug offense predicates include Defendant's conviction for delivery of a controlled substance and delivery of a controlled substance within 1000 feet of a school. Potential violent felony predicates identified in the indictment include Defendant's conviction for burglary in the first degree and escape in the second degree.

Defendant's prior controlled substance convictions qualify as ACCA predicates. *United States v. Mayer*, 560 F.3d 948, 964 (9th Cir. 2009). As of the time period of Mr. Schatz and Mr. Cassino-DuCloux's representation of Smith, Smith's prior convictions for burglary and escape were also recognized as being ACCA predicates. *Id.* at 963 ("We therefore hold that first-degree burglary under Oregon Revised Statutes section 164.225 categorically poses a serious potential risk of physical injury to people present in a dwelling at the time of a burglary, and to people in the immediate area of a building if a confrontation does occur."); *Canada v. Gonzales*, 448 F.3d 560, 570 (2d Cir. 2006) (noting that "the courts have regularly found that the crime of prison escape involves the inherent risk of violence, even if the escapee is able to flee the prison without detection").

The case law finding that the crimes of burglary, as defined in Oregon statutory law, and escape qualified as ACCA predicates rest on the application of § 924(e)'s residual clause as found in the Act's definition of "violent felony." The ACCA defines a "violent felony" as any crime punishable by imprisonment of more than a year that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or ***otherwise involves conduct that presents a serious potential risk of physical injury to another*** . . . ." § 924(e)(2)(B) (emphasis added).[4]

As a result of the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the application of the ACCA residual clause to burglary and escape convictions under Oregon law is in substantial doubt. In *Johnson*, the Supreme Court held that the ACCA

---

[4] The Oregon statute defining first-degree burglary defines "burglary" more broadly than the usual generic definition of burglary. *See Mayer*, 560 F.3d at 959. Therefore, first-degree burglary under Oregon's statute qualifies as a "violent felony" only through the residual clause of § 924(e).

residual clause is "so shapeless a provision" that its use "to condemn someone to prison for 15 years to life does not comport with the Constitution's guarantee of due process." *Id.* at 2560. After *Johnson*, the sentences of criminal defendants can no longer be increased using the ACCA's residual clause. Consequently, it appears that under current law, Smith's convictions for burglary and escape do not qualify him for the ACCA enhancement.

Irrespective of the *Johnson* decision, however, at the time of Mr. Schatz and Mr. Cassino-DuCloux's representation of Smith, Mr. Schatz and Mr. Cassino-DuCloux believed that they were obligated to advise Smith of at least the ***potential*** application of the ACCA to his case. Indeed, in 2012, at the time of Smith's guilty plea, it was by no means certain that the Supreme Court would declare the ACCA residual clause unconstitutional. As late as June 2011, the Supreme Court continued to invoke § 924(e)'s residual clause to characterize state crimes as "violent felonies" for purposes of the ACCA. *See Sykes v. United States*, 564 U.S. 1, 131 S. Ct. 2267, 2269-2270 (2011) (holding that when the driver of a vehicle knowingly or intentionally flees from law enforcement, the individual commits a "violent felony" as defined by the ACCA).

In 2012, Smith's counsel had no way of knowing that the Supreme Court would decide *Johnson* in the way that it did. To the best of their abilities, Mr. Schatz and Mr. Cassino-DuCloux advised Smith of the potential punishment he faced given the state of the law at the time. Counsel's failure to anticipate a change in the law does not fall below objective standards of reasonableness *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and ***to evaluate the conduct from counsel's perspective at the time***." (emphasis added)); *McCoy v. United States*, 19 F. App'x 557, 558 (9th Cir. 2001) ("[The defendant's] attorney did not provide ineffective assistance by failing to

anticipate decisions that were not available at the time of [the defendant's] appeal."). Nor does an unanticipated change in the law render Smith's guilty plea unknowing and involuntary. *See United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005).

Smith also argues that regardless of whether the ACCA applied to his convictions in 2012, his counsel led him to believe that if the law concerning the ACCA changed, he would be allowed to withdraw his guilty plea and proceed to trial. For this additional reason, Smith argues that he received ineffective assistance of counsel that made his guilty plea unknowing and involuntary. Mr. Schatz and Mr. Cassino-DuCloux do not remember telling Smith that he could withdraw his guilty plea if the law changed. They state that if they did have any conversation with Smith about changes in the law, the conversation would only have concerned the effect of changes between when Smith pled guilty and when he was sentenced, not changes that occurred years after sentencing. Moreover, Smith signed a plea petition stating that he understood that even if the Court imposed a sentence different from what he expected to receive under the terms of his plea agreement, he did not have a right to withdraw his plea.[5] Smith therefore knew that he did not have a general right to withdraw his guilty plea. Accordingly, the Court finds that there is no evidence that Smith's counsel advised him that he had the right to withdraw his guilty plea after sentencing if the law regarding the ACCA changed in his favor. The performance of Smith's counsel did not fall below objective standards of reasonableness, and with his counsel's advice, Smith entered a knowing and voluntary guilty plea.

## B.  Whether Smith's Counsel Should Have Filed a Direct Appeal

Smith also argues that Mr. Kim provided ineffective assistance of counsel by ignoring Smith's request to file a direct appeal challenging the Court's denial of Smith's motion to

---

[5] Dkt. 45 at 4.

withdraw his guilty plea. Mr. Kim does not remember Smith ever making such a request. Additionally, even if Smith had made such a request, Smith waived his right to file a direct appeal. The Ninth Circuit has held that waivers of the right to appeal are enforceable. *See United States v. Medina-Carrasco*, 806 F.3d 1205, 1210 (9th Cir. 2015), *amended and superseded on denial of rehearing en banc*, 815 F.3d 457 (9th Cir. Mar. 2, 2016) (declining to reach the merits of the defendant's claim because he waived the right to appeal in his plea agreement). Therefore, Smith cannot satisfy the second prong of *Strickland* by showing that there is a reasonable probability that, but for his counsel's failure to file a direct appeal, the result of his case would have been different.

Moreover, even if Smith had not waived his right to appeal, Smith has not shown that his appeal would have had merit. The Court denied Smith's motion to withdraw his guilty plea because Smith could not "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Fair and just reasons for withdrawal of a guilty plea "include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005) (quoting *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004)) (emphasis omitted). Smith does not assert that the Court conducted an inadequate plea colloquy. Nor does he point to any newly discovered evidence that the Court failed to consider when denying his motion.

Smith argues only that at the time he pled guilty, his counsel had misinformed him about the applicability of the ACCA, making his plea unknowing and involuntary. For the reasons discussed above, however, Smith was not misinformed about the applicability of the ACCA. At the time Smith was charged, the grand jury alleged that he qualified as an Armed Career

Criminal due to a number of predicate felony convictions. Although Smith's burglary and escape convictions may not now qualify him as an Armed Career Criminal, they did in 2012. By pleading guilty, Smith avoided being charged under the ACCA. This was a knowing and voluntary plea made with affective assistance. Thus, Smith has not presented any reason why the the Court erred in denying his motion to withdraw his guilty plea. Because Smith has not shown that a direct appeal of the Court's decision would have had any effect on his sentence, he has not established that he received ineffective assistance of counsel.

**C. Whether Smith's Counsel Failed to Conduct Sufficient Discovery**

Smith also argues that he received ineffective assistance of counsel because Mr. Schatz and Mr. Cassino-DuCloux conducted insufficient discovery. This anemic discovery, argues Smith, led to an erroneous application of the Sentencing Guidelines for a felon in possession of ammunition. U.S.S.G. § 2K2.1(b)(6). According to Smith, his counsel failed to interview Mr. Hall, who would have told them that Smith did not have a gun or any ammunition at the Interstate Bar and Grill. Smith asserts that if Mr. Hall had given Smith's counsel this statement, Smith would have proceeded to trial. As detailed in Mr. Schatz and Mr. Cassino-DuCloux's declaration, however, Smith's counsel contacted Mr. Hall through their investigator, Mr. Warner. When Mr. Warner interviewed Mr. Hall, Mr. Hall said he did not remember anything about the shooting. A request to the government for all exculpatory evidence did not yield any more helpful statements by Mr. Hall.

Contrary to Smith's assertions, his counsel engaged in a thorough discovery process that included obtaining a statement from Mr. Hall. That Mr. Hall's statement does not conform to Smith's expectations does not mean that Smith received ineffective assistance. The evidence indicates that Smith had ammunition on May 22, 2011, and Smith pled guilty to that offense. His counsel's purported lack of zeal in conducting discovery did not result in Smith being sentenced

under an inapplicable section of the Sentencing Guidelines. Therefore, Smith has not met either prong of *Strickland*. His counsel's actions neither fell below objective standards of reasonableness nor resulted in prejudice to Smith.

**D. Whether Smith's Counsel Otherwise Deprived Him of a Meaningful Opportunity to Establish his Actual Innocence**

Smith's fourth claim of ineffective assistance of counsel incorporates his other arguments. According to Smith, his counsel's incorrect advice and failure to discover exculpatory statements by Mr. Hall prevented him from establishing that he did not violate § 922(g) by unlawfully possessing ammunition. For the same reasons discussed above, Smith has not shown ineffective assistance of counsel.

## CONCLUSION

Smith's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Dkt. 93) is DENIED. No evidentiary hearing is necessary because the allegations in Smith's motion, when viewed against the record, do not give rise to a claim for relief. The Court declines to issue a Certificate of Appealability on the basis that Smith has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

DATED this 6th day of June, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge